**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| TIMOTHY BELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **No.: 12-3138-CSB-DGB** |
| | ) |
| | ) |
| EUGENE MCADORY and | ) |
| TARRY WILLIAMS, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

**COLIN S. BRUCE, U.S. District Judge:**

This cause is before the Court on Defendants Eugene McAdory and Tarry Williams' motion for summary judgment. As explained more fully *infra*, Defendants are entitled to summary judgment because there are no genuine issues of material fact that must be determined by a trier of fact and because Defendants have shown that they are entitled to judgment as a matter of law on each of the three claims asserted against them by Plaintiff Timothy Bell.

**I.
BACKGROUND AND MATERIAL FACTS**

Plaintiff Timothy Bell is, and was at all relevant times, a civil detainee currently housed at the Treatment and Detention Facility operated by the Illinois Department of Human Services in Rushville, Illinois ("Rushville"). From June 4, 2010, through July 1, 2010, Defendant Tarry Williams was a Security Therapy Aide IV at Rushville, and he served as a zone supervisor of Rushville's Special Management Unit and infirmary. Defendant Eugene McAdory was Rushville's Security Director from June 4, 2010, through July 1, 201.

On June 4, 2010, Bell returned to Rushville after serving a four-year sentence in the Illinois Department of Corrections ("IDOC") for aggravated battery after he assaulted a security aide at Rushville. After returning to Rushville, Bell, like all other residents at Rushville, was required to participate in an initial seventy-two hour intake process. During the intake process, a new or returning resident would be assigned a room in the Special Management Unit and given few amenities. In addition, new or returning residents would be interviewed by security and treatment staff. If the resident were non-cooperative during the initial intake process or if the resident posed a threat to himself, security personnel, or other residents, the Security Director or the Program Director could order that resident to remain in the Special Management Unit until he no longer presented a threat and was cooperative. McAdory developed this intake immersion process based upon his experience as the Security Director at Rushville and based upon his experience with IDOC.

Upon his return to Rushville, Bell was placed in a room in the Special Management Unit where he had clothes, a bed, bed sheets, a blanket, a toilet, a sink, and personal hygiene products. However, Bell refused to participate in the intake process.[1] Specifically, Bell refused to be interviewed by staff, and he displayed hostility toward the staff, including making threats against the staff.

Accordingly, McAdory ordered Bell to remain in the Special Management Unit until he no longer presented a threat to himself or to others. Nevertheless, Bell's hostility continued. On June 8 and again on June 23, 2010, Bell refused to have his photograph taken for identification purposes. In response to the directive to have his photograph taken, Bell threatened to harm

---

[1] Bell claims that he refused to participate in the intake procedures "for legal reason" and that he made this fact clear to the staff at Rushville. Regardless of his reasons, it is undisputed that Bell refused to participate in the intake process, and he threatened the staff.

Williams. On June 23, 2010, staff reported that Bell had flooded his room.[2] In addition, Bell placed paper over the observation window in his room so that staff could not see him.

In response to Bell's actions, McAdory ordered Bell be removed from the Special Management Unit and that he be placed in the infirmary so that he could more easily be observed through the larger observation windows in the infirmary. When the extraction team arrived at his room, Bell refused to comply with the team's order that he place his hands in the chuckhole to his room so that he could be placed in restraints. Accordingly, the extraction team forcibly removed Bell from his room and transported him to the infirmary. McAdory ordered that Bell have no clothing or other property while he was in the infirmary to prevent Bell from covering the observation windows and to prevent Bell from harming himself or others.

On July 1, 2010, Bell agreed to follow Rushville's rules and agreed to participate in Rushville's intake procedures. Thereafter, Bell was given clothing and was transferred to a new room.

On May 28, 2012, Bell filed the instant suit under 42 U.S.C. § 1983 alleging that McAdory and Williams violated his constitutionally protected rights. On June 28, 2012, the Court determined, after conducting a merit review under 28 U.S.C. § 1915A, that Bell's Complaint stated three causes of action: (1) a claim that Defendants violated his due process rights under the Fourteenth Amendment based upon the conditions of his confinement; (2) a claim that Defendants violated his due process rights under the Fourteenth Amendment based upon his extended stay in the Special Management Unit and his placement in segregation in the infirmary; and (3) a claim that Defendants exercised excessive force against him in violation of

---

[2]   Bell disputes the claim that he flooded his room.

his rights under the Fourth and Fourteenth Amendments when he was forcibly removed from his room.

Defendants have now filed the instant motion arguing that there are no genuine issues of material fact that need to be decided by the trier of fact and that they are entitled to judgment as a matter of law. Bell responds by arguing that Defendants have failed to show that they are entitled to judgment as a matter of law. Instead, Bell asks the Court to enter judgment on the pleadings in his favor.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish

that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## III.
### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

**A.      Defendants did not violate Bell's due process rights based upon the conditions of his confinement.**

Bell asserts three ways or manner in which Defendants violated his Fourteenth Amendment due process rights as they relate to the conditions of his confinement. *First*, Bell complains that being placed in the Special Management Unit for seventy-two hours upon his return to Rushville was unconstitutional. In fact, Bell contends that the entire intake procedures developed by McAdory are unlawful in that the Illinois Administrative Code sets forth the procedures that must be employed when a new resident arrives at Rushville, not McAdory's self-determined intake procedures. *Second*, Bell claims that Defendants' decision to use an extraction team to remove him from his room on June 23, 2010, violated his due process rights. *Third*, Bell asserts that the extreme cold in the infirmary, especially given the fact that he was totally naked while there, violated his due process rights and constituted cruel and unusual punishment.

As for his claim regarding the extraction team, that claim will be discussed more fully *infra*. However, the Court finds that the use of an extraction team to remove Bell from his room

did not violate his due process rights in light of his admission that he was being belligerent and was threatening staff.

As for his claim that his placement in the Special Management Unit for seventy-two hours failed to comply with Illinois law and, therefore, violated his Fourteenth Amendment rights, Bell is simply incorrect as a matter of law that Defendants' alleged violations of the Illinois Administrative Code establishes his case. Bell repeatedly argues throughout his brief that Defendants failed to follow 59 Ill. Adm. Code § 299 in their treatment of him. Bell argues that the entire intake procedures developed by McAdory and employed at Rushville for new residents violates 59 Ill. Adm. Code § 299 and that this Code section sets forth the proper procedures for dealing with civilly detained individuals like himself.

Assuming *arguendo* that Defendants violated 59 Ill. Adm. Code § 299 in any manner, this violation does not mean that Bell prevails in this case or that Defendants violated Bell's constitutional rights. On the contrary, "a violation of a state law by a government employee standing alone does not violate the federal Constitution." *Gonzalez v. City of Gary*, 2000 WL 1047523, * 2 (7th Cir. July 27, 2000); *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988)(*en banc*)(citing *Snowden v. Hughes,* 321 U.S. 1, 11 (1944)("Mere violation of a state statute does not infringe the federal Constitution.")). Thus, to the extent that Bell's response and motion for judgment on the pleadings are premised upon Defendants' violation of the Illinois Administrative Code, Bell's argument is incorrect as a matter of law, and Defendants are entitled to summary judgment.

As for his claim that the temperature in the infirmary was so cold that it violated his constitutional rights, the Court disagrees. The United States Supreme Court has made clear that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and

6

unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This means that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as an infliction of punishment." *Id*. at 838.

Accordingly, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. This type of deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Frazen*, 780 F.2d 645, 653 (7th Cir. 1985).[3] "[M]ere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995), *abrogated on other grounds, Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Here, Bell failed to present any evidence that the cold in the infirmary was of such a degree that it violated his due process rights or constituted cruel and unusual punishment. Bell acknowledges that he did not ask for the temperature to be adjusted, and Defendants have

---

[3] As a civil detainee, Bell's claim arises under the Fourteenth Amendment, not the Eighth, but that is a distinction without a difference. "[C]ourts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners, and the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees." *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664-65 (7th Cir. 2012)(internal citations omitted).

asserted that the temperature in Bell's room was the same as the temperature in the Special Management Unit. As noted *supra*, Defendants cannot be held liable for violations of which they are unaware. *Farmer*, 511 U.S. at 838.

Although Bell was without clothing and, therefore, more susceptible to being cold, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," and so, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)(internal quotations omitted). Indeed, "the Constitution . . . does not mandate comfortable prisons." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). If prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 349 (1981). Thus, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." *Id*. at 347.

Moreover, Bell has not demonstrated the type of conduct by Defendants that deprived him of the minimally civilized measure of life's necessities. Bell admits that the cold only lasted for approximately one week, and it was due to his own refusal to engage in the intake procedures and to comply with Rushville's rules regarding threatening staff. *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004)("[T]he Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposed to inadequate cooling and ventilation."); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional.").

In addition, Bell does not allege and has not shown any harm resulting from the cold. *Vasquez v. Frank*, 2008 WL 3820466, * 2-3 (7th Cir. Aug. 15, 2008)(holding that ventilation that

allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Jasman v. Schmidt*, 2001 WL 128430, * 2 (6th Cir. Feb. 6, 2001)(rejecting a prisoner's complaint about poor ventilation where plaintiff failed to allege harm caused by the ventilation). As such, Bell's claim of extreme cold is insufficient to demonstrate a Constitutional violation. *Chandler*, 379 F.3d at 1290-98 (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment where such temperatures were expected and tolerated by the general public in Florida). Bell has claimed uncomfortable conditions, but he has not alleged a violation of his Constitutional rights. *E.g.*, *Strope v. Sebelius*, 2006 WL 2045840, * 2 (10th Cir. July 24, 2006)("Mr. Strope claims that the prison lacks adequate ventilation, and that fans are necessary to control the 'excessively hot' temperature and to provide ventilation. He further asserts that the high temperatures make it hard to sleep. Although these conditions are no doubt uncomfortable, we conclude that Mr. Strope's allegations are insufficient to state a claim of violation of the Eighth Amendment."); *Deal v. Cole*, 2013 WL 1190635, * 2 (W.D.N.C. Mar. 22, 2013)("Plaintiff's allegations of cold air in his cell, without more, are not sufficiently objectively serious to state a claim under the Eighth Amendment."); *Cameron v. Howes*, 2010 WL 3885271, * 9 (W.D. Mich. Sept. 28, 2010)(dismissing plaintiffs' claim for failing to allege extreme deprivation as a result of inadequate ventilation causing high temperatures in the cells).

In sum, Bell has not shown conditions so egregious that would trigger the Constitution's protections. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992)(objective component met where prison conditions were "so strikingly reminiscent of the Black Hole of Calcutta"). Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v.*

*Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988); *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir. 1994)("[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons."). Accordingly, Defendants are entitled to summary judgment on Bell's conditions of confinement claim against them.

**B.     Defendants did not violate Bell's due process rights by keeping him in the Special Management Unit and by placing him in the infirmary.**

Likewise, Defendants are entitled to summary judgment on Bell's claim that they violated his Fourteenth Amendment rights by keeping him in the Special Management Unit and by placing him in the infirmary from June 4 until July 1, 2010. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995)(quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "Decisions and actions by prison authorities which do not deprive an inmate of a protected liberty interest may be made for any reason or for no reason." *Richardson v. Brown*, 2013 WL 5093801, * 5 (S.D. Ind. Sept. 11, 2013).

An inmate[4] has "no liberty interest in remaining in the general prison population." *Williams*, 71 F.3d at 1248. "In fact, absent a constitutional, statutory, or regulatory bar, 'a prisoner may be transferred for any reason, or for no reason at all.'" *Id*. at 1249 (quoting *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988)). "An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement

---

[4]  The Court recognizes that Plaintiff is a civil detainee, not an inmate. "[C]ivil detainees who are more disruptive than prison inmates can be subjected to greater restrictions without those restrictions constituting punishment. But, such detainees still have the same right as criminals to complain of a deprivation of liberty without due process of law if the restrictions constitute a deprivation of liberty within the meaning of the Constitution as interpreted by the Supreme Court . . . ." *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011).

impose 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Richardson*, 2013 WL 5093801, at * 5 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

In the Seventh Circuit, "a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state." *Id.* "Merely being placed in a disciplinary unit, or being confined under conditions more onerous than conditions in other housing units of the jail does not violate the guarantee of due process." *Id.*

In fact, the Seventh Circuit has described an inmate's liberty interest in avoiding disciplinary segregation as very limited or even nonexistent. *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008). As a result, the Seventh Circuit has indicated that, generally, extended stays in segregation are necessary to give rise to a due process claim. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009)(citing cases).

Initially, the Court questions whether Bell's twenty-three day stay in Rushville's Special Management Unit and infirmary is sufficient in duration to give rise to a claim that Defendants deprived him of his liberty interest.[5] Regardless, the Court finds that Defendants did not violate Bell's due process rights by placing keeping him in the Special Management Unit and the infirmary.

---

[5] *Townsend v. Fuchs*, 522 F.3d 765, 766, 722 (7th Cir. 2008)(holding that "inmates have no liberty interest in avoiding placement in discretionary segregation")(59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005)(holding that the punishments the plaintiff suffered because of his disciplinary conviction-demotion in status, segregation and transfer-raise no due process concerns)(60 days); *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005)(noting that "being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process")(2 days).

Here, Defendants acted reasonably in keeping Bell in the Special Management Unit and in the infirmary for an extended period of time. Bell admitted that he refused to participate in the intake procedures. Bell admitted that he was generally uncooperative. Bell admitted that he threatened Williams with physical harm. Bell admitted that he obstructed the view of his room with paper. Finally, Bell refused to be placed in restraints so that he could be transported to the infirmary.

The fact that Bell believed that he had a good faith basis for his actions, *i.e.*, a "legal basis," does not change the fact that Defendants acted reasonably in keeping Bell segregated until he agreed to participate in the intake procedures and to the rules and regulations imposed upon the residents at Rushville. *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003)("To the extent that plaintiffs are uncontrollably violent, and thus pose a danger to others, Wisconsin is entitled to hold them in segregation for that reason alone; preserving the safety of the staff and other detainees takes precedence over medical goals. . . . Just as a pretrial detainee may be put in isolation—indeed, may be *punished* for violating institutional rules, provided that the jailers furnish notice and an opportunity for a hearing—so a civil detainee may be isolated to protect other detainees from aggression. Institutions may employ both incapacitation and deterrence to reduce violence within their walls . . . . Either way, if at trial defendants can establish that their use of seclusion was justified on security grounds, they will prevail without regard to the question whether extended seclusion is justified as a treatment.")(internal citations omitted and emphasis in original). The Court cannot say that Defendants' exercise of their professional judgment to keep Bell isolated until he no longer presented a danger to himself, to other residents, or to the staff was anything but reasonable. *Id.*; *Townsend v. Fuchs*, 522 F.3d 765, 711 (7th Cir. 2008)(holding that involuntary detainees have no liberty interest in avoiding transfer to

discretionary segregation imposed for protective purposes).  Accordingly, the Court finds that

Defendants did not violate Bell's due process claims by keeping him in the Special Management

Unit and the infirmary for an extended period of time.[6]

## C.      Defendants are not liable to Bell for his excessive force claim.

Finally, Defendants are entitled to summary judgment on Bell's excessive force claim.

The United States Supreme Court has set forth the standards by which this Court must evaluate a

claim of excessive force under the Eighth Amendment.  In *Wilkins v. Gaddy*, 559 U.S. 34 (2010),

the Supreme Court re-emphasized its holding in *Hudson v. McMillan*, 503 U.S. 1 (1992), that the

"'core judicial inquiry [] was not whether a certain quantum of injury was sustained, but rather

whether force was applied in a good faith-effort to maintain or restore discipline, or maliciously

and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).  The

Supreme Court went on to say:

> "When prison officials maliciously and sadistically use force to cause harm," the
> Court recognized, "contemporary standards of decency always are violated . . .
> whether or not significant injury is evident.  Otherwise, the Eighth Amendment
> would permit any physical punishment, no matter how diabolic or inhuman,
> inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112
> S. Ct. 995; see also *id*., at 13-14, 112 S. Ct. 995 (Blackmun, J., concurring in
> judgment)("The Court today appropriately puts to rest a seriously misguided view
> that pain inflicted by an excessive use of force is actionable under the Eighth
> Amendment only when coupled with 'significant injury,' *e.g.,* injury that requires
> medical attention or leaves permanent marks").
>
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth
> Amendment inquiry. *Id*. at 7, 112 S. Ct. 995.  "[T]he extent of injury suffered by
> an inmate is one factor that may suggest 'whether the use of force could plausibly
> have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*,

---

[6] The Court also finds that Bell failed to develop a factual record demonstrating that the duration
and conditions in the Special Management Unit and in the infirmary were sufficient to violate
their Fourteenth Amendment rights.

475 U.S. at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

*Id*. at 37-38.

In the instant case, Bell has admitted that neither McAdory nor Williams had any direct, personal involvement in removing him forcibly from his room as neither was on the extraction team. "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). Indeed, the Seventh Circuit has explained that the doctrine of *respondeat superior* (a doctrine whereby a supervisor may be held liable for an employee's actions) has no application to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010).

Instead, in order for a supervisor to be held liable under § 1983 for the actions of his subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)("An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.")(internal quotation omitted). "[S]upervisors must know about the

conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

McAdory was not on the extraction team, and there is no evidence in the record demonstrating that he was present when Bell was removed forcibly from his room. As such, it is clear that McAdory had no personal involvement in the extraction that formed the basis for Bell's excessive force claim, and thus, he is entitled to summary judgment on this claim against him.

As for Williams even if he were considered to have been personally involved in Bell's extraction based upon his supervisory status, Williams is, nevertheless, entitled to summary judgment. Bell has alleged no injury as a result of the extraction. Although sustaining an injury is not a prerequisite to maintaining his excessive force claim, the lack of any injury is evidence that excessive force was not employed.[7] *Wilkins*, 559 U.S. at 37.

Furthermore, there is no evidence that Williams or anyone on the extraction team used excessive force in removing Bell from his room. Although Bell disputes Williams' assertion that he flooded his room, Bell admits that he threatened Williams (and others), that he obstructed the view of his room, that he had a history of assaults on staff, and that he refused to place his hands

---

[7] Bell testified that a security therapist aide (not either Defendant) punched him in his face and pushed him to the ground. Bell Dep. at pgs. 80-84. However, Bell testified that he was not aching as a result of the punch and that any injuries that he sustained were superficial and did not need medical attention. Bell also testified that security therapist aides injured his wrist by pulling on the handcuffs and chain attached to his left arm through the chuckhole at the infirmary, but Williams was not the individual pulling on the chain or the one who injured Bell's wrist, and Bell admits that he does not know if Williams was present during the extraction. *Id*. at pgs. 122-124.

through his room's chuckhole so that he could be restrained prior to his transfer to the infirmary. The only evidence in the record is that the extraction team forcibly removed Bell and placed restrains upon him. However, simply placing a detainee in handcuffs does not by itself violate the Fourth Amendment. *West*, 333 F.3d at 748 ("If professional judgment leads to the conclusion that restraints are necessary for the well-being of the detainee (or others), then the Constitution permits those devices."); *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005)(denying a § 1983 claim because the use of handcuffs to detain an occupant was reasonable because the governmental interests in safety outweighed the intrusion); *Cooper v. City of Virginia Beach, Virginia*, 817 F. Supp. 1310, 1315 (E.D. Va. 1993)("[H]andcuffing [an] arrestee does not constitute unreasonable force."). Given this undisputed evidence, the Court finds as a matter of law that Williams did not employ excessive force against Bell in violation of his constitutional rights and that, as a result, Williams is entitled to summary judgment on this claim against him.

**IT IS, THEREFORE, ORDERED:**

1. **Plaintiff's motion for judgment on the pleadings [53] is DENIED.**

2. **Defendants' Motion for Summary Judgment [49] is GRANTED. The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the Parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.**

3. **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

4. **If Plaintiff wishes to proceed in forma pauperis on appeal, his motion for leave to appeal in forma pauperis must identify the issues that he will present on appeal to**

**assist the Court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *Celske v. Edwards*, **164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 11th day of August, 2014

s/ Colin S. Bruce
COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE